UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

THE ESTATE OF MARILYN MONROE, LLC,

    Plaintiff,

vs.

MONROE'S PALM BEACH, LLC,

    Defendant.

_____/

## COMPLAINT

This is an action by Plaintiff The Estate of Marilyn Monroe, LLC ("The Monroe Estate" or "Plaintiff") to recover damages arising from infringement of The Monroe Estate's federally registered trademarks and other intellectual property rights by Defendant Monroe's Palm Beach, LLC ("Defendant") and to enjoin Defendant's future infringement of The Monroe Estate's trademarks and other intellectual property rights. In support of its claims, Plaintiff alleges as follows:

## THE PARTIES

1. The Monroe Estate is a limited liability corporation organized under the laws of Delaware, with a principal place of business at 100 West 33rd Street, Suite 1007, New York, New York 10001.

2. Defendant is a Florida limited liability company with its principal place of business at 1000 North Congress Avenue, West Palm Beach, Florida 33409.

## JURISDICTION AND VENUE

3. This action arises under the Federal Trademark Act of 1946, known as the Lanham Act (15 U.S.C. §§ 1051-1127), and is for trademark infringement and unfair competition.

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to personal jurisdiction in this district because Defendant is domiciled in Florida, purposefully directed its unlawful acts at this forum and transacts business within the State of Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391because Defendant is domiciled in Florida, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Business & Valuable Trademark Rights

7. Marilyn Monroe was an American actress, singer and model. To this day, more than 50 years after her death, Marilyn Monroe remains one of the most beloved celebrities of all-time and an enduring icon of American popular culture.

8. The Monroe Estate is a premier brand development and licensing company with exclusive ownership of intellectual property rights related to Marilyn Monroe.

9. The Monroe Estate is the purchaser and exclusive holder of certain rights related to the late Marilyn Monroe, including rights in and to her name and likeness.

10. Since at least as early as 1983, the distinctive and famous MARILYN MONROE trademarks, and variants thereof, have been continuously and pervasively used in connection with a wide range of goods and services including a variety of licensed

merchandise.

11. In recognition of the distinctiveness of the marks owned by The Monroe Estate, the United States Patent & Trademark Office ("PTO") has issued the registrations incorporating the terms MARILYN MONROE set forth in the chart below:

| Mark | Reg. No. | Int'l Class(es) | Reg. Date |
|---|---|---|---|
| *[signature]* | 1,509,758 | 3, 14, 16, 25 | 10/25/1988 |
| *[signature]* | 1,889,730 | 9, 16, 21, 24, 28, 33 | 4/18/1995 |
| MARILYN MONROE | 2,180,950 | 16 | 8/11/1998 |
| MARILYN MONROE | 2,223,599 | 25 | 2/16/1999 |
| MARILYN MONROE | 2,985,935 | 18 | 8/16/2005 |
| MARILYN MONROE | 4,336,364 | 14 | 5/14/2013 |

In addition to these registrations, The Monroe Estate also owns substantial common law rights in the MARILYN MONROE marks and common law uses thereof and these registrations incorporating the MARILYN MONROE marks are collectively referred to herein as the "MONROE Marks."  True and correct copies of the certificates of registration for the MONROE Marks are attached as **Exhibit A**.

12. Each of the registrations for the MONROE Marks is valid and subsisting in full force. Registration Nos. 1,509,758; 1,889,730; 2,180,950; and 2,223,599 are incontestable. Pursuant to 15 U.S.C. §1115(b), such incontestable registrations provide conclusive evidence of the validity of those MONROE Marks and of the registrations for those MONROE Marks, of The Monroe Estate's ownership of those MONROE Marks and of The Monroe Estate's exclusive rights to use those MONROE Marks in commerce on or in connection with the goods or services specified within such registrations.

13. The Monroe Estate is also the exclusive owner of those rights in and to Marilyn Monroe's identity, persona, name and likeness arising under common law and/or statute including, without limitation, 15 U.S.C. §1125(a) of the Lanham Act, as well as the <www.marilyn-monroe.com> and <www.marilynmonroe.com> domain names and related websites (together with the MONROE Marks, the "Marilyn Monroe Intellectual Property").

14. The Marilyn Monroe Intellectual Property has been licensed to third parties for use on or in connection with various goods and services for decades. For example, the Monroe Estate has licensed the Marilyn Monroe Intellectual Property to third parties to sell goods and services such as spa and salon services, clothing, accessories, perfumes, posters, wine, collectibles and other licensed merchandise and services. The Monroe Estate's licensees are currently selling a wide variety of goods and services using the Marilyn Monroe Intellectual Property throughout the United States and abroad.

15. The distinctiveness of the Marilyn Monroe Intellectual Property is buttressed by the widespread secondary meaning in the marketplace of the Marilyn Monroe Intellectual Property being a source identifier for merchandise authorized by the Monroe Estate. The Monroe Estate and its predecessors have expended substantial efforts and significant sums of money in acquiring, advertising, enforcing, promoting and advertising the Marilyn Monroe Intellectual Property throughout the United States and internationally.

### B. Defendant's Wrongful Conduct

16. Defendant is a company that offers adult entertainment, including nude female dancing (the "Infringing Services").

17. Notwithstanding The Monroe Estate's long-standing use and prior rights in and to the

Marilyn Monroe Intellectual Property, Defendant uses the name MONROE, the likeness of Marilyn Monroe and other elements of the Marilyn Monroe Intellectual Property in connection with its services.

18. Defendant's advertisements, which feature scantily clad women, incorporate a silhouette of Marilyn Monroe from the movie "The Seven Year Itch" – an iconic image which is indelibly linked to Marilyn Monroe and her persona.  True and correct copies of two of Defendant's advertisements are attached hereto as **Exhibit B**.

19. At Defendant's website, available at www.monroespalmbeach.com, Defendant makes numerous attempts to connect its business and services with the likeness of Marilyn Monroe, including references to Hollywood, including Walk of Fame stars and multiple appearances of a quote attributed to Marilyn Monroe: "Who said nights were for sleep?"  True and correct copies of screenshots from Defendant's website are attached hereto as **Exhibit C**.

20. A number of Defendant's advertisements feature images of women who appear to be Marilyn Monroe.  True and correct copies of advertisements from Defendant's profile on Facebook.com are attached hereto as **Exhibit D**.

21. In an effort to advertise Defendant's business and services on the social media site Twitter, Defendant uses an image of a woman who appears to be Marilyn Monroe.  A true and correct copy of Defendant's Twitter page is attached hereto as **Exhibit E**.

22. Defendant's widespread and continuous usage of images of, and images pertaining to Marilyn Monroe demonstrate Defendant's efforts to call attention to its use of the Marilyn Monroe Intellectual Property for the purpose of creating the appearance of an association with or approval by Marilyn Monroe and/or The Monroe Estate, when no

association or approval exists.

23. Defendant maintains no rights or claims to ownership of any Marilyn Monroe Intellectual Property, and Defendant has not been granted permission or a license by The Monroe Estate to use, display, reproduce, sub-license, manufacture, distribute, market or sell any goods or services using or bearing the Marilyn Monroe Intellectual Property.

24. Defendant was put on notice of Plaintiff's objection to its use of the Marilyn Monroe Intellectual Property by virtue of a cease and desist correspondence sent to Defendant.

25. Despite follow-up correspondence and actual knowledge of its infringement, upon information and belief, Defendant refused to cease use of the Marilyn Monroe Intellectual Property and continues to use the Marilyn Monroe Intellectual Property.

26. Defendant's use of the Marilyn Monroe Intellectual Property is nearly identical to and confusingly similar to the Marilyn Monroe Intellectual Property.  Defendant's actions have caused, and continues to be likely to cause confusion, mistake or deception as to the source or origin of Defendant's goods or services and/or falsely suggest a sponsorship, connection, license, or association between Defendant and Marilyn Monroe and/or The Monroe Estate.

27. Defendant's use of the Marilyn Monroe Intellectual Property in connection with the Infringing Services disparages and dilutes the Marilyn Monroe Intellectual Property.

28. Defendant's use of the Marilyn Monroe Intellectual Property trades off the goodwill of the Marilyn Monroe Intellectual Property and is without permission or license from The Monroe Estate.

29. Upon information and belief, Defendant uses, intends to use, and continues to use the Marilyn Monroe Intellectual Property without The Monroe Estate's authorization,

thereby confusing consumers as to the source of its services, disparaging and diluting the Marilyn Monroe Intellectual Property and resulting in damage and detriment to The Monroe Estate and its reputation and goodwill.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement
### (15 U.S.C. § 1114, Lanham Act § 32, and Common Law)

30. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 29 above, as if fully stated herein.

31. Defendant has used in commerce, without The Monroe Estate's permission, the Marilyn Monroe Intellectual Property in a manner that is likely to cause confusion with respect to the source and origin of Defendant's business and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of The Monroe Estate with Defendant and/or the Infringing Services.

32. Defendant's acts constitute willful infringement of the Marilyn Monroe Intellectual Property in violation of 15 U.S.C. § 1114 and the common law.

33. As a direct and proximate result of Defendant's wrongful acts, The Monroe Estate has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation and goodwill. Defendant will continue to use, unless restrained, the Marilyn Monroe Intellectual Property or marks confusingly similar thereto and will cause irreparable damage to The Monroe Estate. The Monroe Estate has no adequate remedy at law and is entitled to an injunction restraining Defendant, its officers, agents, licensees, servants, employees and all persons acting in concert with Defendant from engaging in further acts of infringement.

34. The Monroe Estate is further entitled to recover from Defendant the actual damages that

it sustained and/or is likely to sustain as a result of Defendant's infringing acts. The Monroe Estate is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendant's acts of infringement.

35. The Monroe Estate is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its infringing acts. The Monroe Estate is presently unable to ascertain the extent of the gains, profits and advantages that Defendant has realized by reason of its acts of infringement.

36. Unless enjoined by this Court from so doing, Defendant will continue to engage in its acts of infringement to the irreparable damage and injury of The Monroe Estate.

37. Because of the willful nature of Defendant's infringement, The Monroe Estate is entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

38. The Monroe Estate is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117 and destruction of infringing articles pursuant to 15 U.S.C. § 1118.

## SECOND CLAIM FOR RELIEF
### False Designation of Origin
### (15 U.S.C. 1125(a))

39. The Monroe Estate repeats and realleges each and every allegation of paragraphs 1 through 38, above, as though fully set forth herein.

40. Defendant's actions as alleged herein constitute false designation of origin, affiliation or sponsorship in violation of 15 U.S.C. § 1125(a).

41. Defendant's unauthorized use in commerce of indicia of Marilyn Monroe's identity and persona, including her name, image, signature and likeness, and/or the MONROE Marks,

constitutes a false designation of origin and a false association that wrongfully and falsely designates the services and products offered thereunder as originating from The Monroe Estate and/or Marilyn Monroe, or as being associated, affiliated or connected with or approved or sponsored by The Monroe Estate and/or Marilyn Monroe.

42. As a direct and proximate result of Defendant's wrongful acts, The Monroe Estate has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation and goodwill. Defendant will continue, unless restrained, to conduct its business using indicia of Marilyn Monroe's identity and persona, including her name, image, signature and likeness, and the MONROE Marks, or the like which are confusingly similar to Marilyn Monroe's identity or persona or the MONROE Marks, and will continue to cause irreparable damage to The Monroe Estate.

43. The Monroe Estate has no adequate remedy at law and is entitled to an injunction restraining Defendant, its officers, agents, servants, licensees, and employees, and all persons acting in concert with Defendant, from engaging in further acts of false designation of origin, affiliation or sponsorship.

44. The Monroe Estate is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts. The Monroe Estate is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendant's acts of false designation of origin, affiliation or endorsement.

45. The Monroe Estate is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its wrongful acts. The Monroe Estate is presently unable to ascertain the extent of the gains, profits, and advantages that

Defendant has realized by reason of its acts of false designation of origin, affiliation or endorsement.

46. Because of the willful nature of Defendant's wrongful acts, The Monroe Estate is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

47. The Monroe Estate is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117 and destruction of infringing articles pursuant to 15 U.S.C. § 1118.

### THIRD CLAIM FOR RELIEF
### Trademark Dilution by Tarnishment
### (15 U.S.C. § 1125(c))

48. The Monroe Estate repeats and realleges each and every allegation of paragraphs 1 through 47, above, as though fully set forth herein.

49. The Monroe Estate and the Marilyn Monroe Intellectual Property have achieved widespread fame and prominence. Such fame and prominence was established in the United States long prior to Defendant's use of the Marilyn Monroe Intellectual Property in connection with the Infringing Services.

50. The MONROE Marks are unique and distinctive.

51. Defendant's aforesaid acts constitute trademark dilution by tarnishment of the federally registered MONROE Marks in violation of the Federal Trademark Dilution Act, codified at 15 U.S.C. § 1125(c).

52. Defendant's aforesaid acts are likely to cause and are causing harm to the reputation of the MONROE Marks and the business associated therewith.

53. Defendant's unlawful conduct has been and continues to be knowing, deliberate and willful.

54. Defendant's aforesaid acts have caused and will continue to cause great and irreparable

injury to The Monroe Estate and, unless such acts are restrained by this Court, they will be continued, and The Monroe Estate will continue to suffer great and irreparable injury.

55.   The Monroe Estate has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### Injury to Business Reputation and Dilution Under Florida Law
### (Title XXXIII, Chapter 495, Section 495.151 of the State of Florida)

56.   The Monroe Estate repeats and realleges each and every allegation of paragraphs 1 through 55, above, as though fully set forth herein.

57.   This is an action for statutory injury to business reputation and dilution pursuant to Florida Statutes § 495.151.

58.   The Monroe Estate, by virtue of its prior adoption and long-standing use in interstate commerce of the MONROE Marks in connection with a wide variety of goods and services in this District and elsewhere, has acquired, established and maintains valuable rights in the MONROE Marks.

59.   Defendant's adoption and continued infringing and improper use of the MONROE name in connection with the Infringing Services constitutes an unauthorized and/or unlicensed use of the MONROE Marks, falsely designates the origin of Defendant's products, has caused confusion, mistake and deception and is likely to cause further confusion, mistake or deception, and therefore is likely to injure the business reputation of The Monroe Estate in violation of Florida Statutes § 495.151.

60.   Defendant's adoption and continued infringing and improper use of the MONROE name in connection with the Infringing Services constitutes an unauthorized and/or unlicensed use of the MONROE Marks, is causing a likelihood of injury to The Monroe Estate's business reputation or of dilution to the distinctive quality of the MONROE Marks.

61. Unless permanently enjoined by this Court, Defendant's continued use, advertising, offering for sale, selling, marketing and promoting of the Infringing Services in conjunction with the MONROE name and Defendant's unauthorized and unlicensed use of the MONROE name will continue to result in the likelihood of further dilution, confusion, mistake and deception of the public concerning the source or origin of the Infringing Services sold, offered for sale, advertised and provided by Defendants and produce the attendant irreparable injury and damage to The Monroe Estate and its goodwill and business reputation, for which The Monroe Estate has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Florida Deceptive and Unfair Trade Practices Act
### (Title XXXIII, Chapter 501, Part II, Section 501.201 of the State of Florida)

62. The Monroe Estate repeats and realleges each and every allegation of paragraphs 1 through 61, above, as though fully set forth herein.

63. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq*.

64. Defendant's improper and deceptive use of the MONROE name in connection with the Infringing Services constitutes deceptive and unfair trade practices under Florida Statutes § 501.201 *et seq.*, in that the Defendants have represented that their goods and products have qualities, characteristics, sponsorship and/or approval that they do not have, and in that Defendants have disparaged the goods, products, services or business of The Monroe Estate by false or misleading representations of fact.

65. The public is likely to be substantially damaged as a result of Defendant's deceptive and unfair trade practices.

66. The Monroe Estate has suffered actual damages as a direct and proximate result of Defendant's wrongful, deceptive and unfair trade practices.

67. Defendant's wrongful, deceptive and unfair trade practices are causing The Monroe Estate to suffer irreparable harm, and irreparable harm will continue unless enjoined.

68. Unless permanently enjoined by this Court, Defendant will continue said deceptive and unfair trade practices, thereby deceiving the public and causing The Monroe Estate immediate and irreparable injury for which it has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### Common Law Unfair Competition

69. The Monroe Estate repeats and realleges each and every allegation of paragraphs 1 through 68, above, as though fully set forth herein.

70. By reason of the foregoing, Defendant has been, and is, engaged in acts of unfair competition in violation of the common law.

71. Upon information and belief, by virtue of Defendant's unlawful conduct, Defendant has made or will make substantial profits and gains to which it is not in law or equity entitled.

72. Defendant's aforesaid conduct has caused The Monroe Estate irreparable harm and, unless enjoined, will continue to cause The Monroe Estate irreparable harm, for which The Monroe Estate has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, The Monroe Estate prays that this Court enter judgment against Defendant as follows:

1. Finding that Defendant:
    a. Violated the Marilyn Monroe Intellectual Property under 15 U.S.C. § 1125(a) and the common law;

  b.  Willfully infringed the MONROE Marks under 15 U.S.C. § 1114 and the common law;

  c.  Willfully conducted acts which resulted in a false designation of origin, affiliation or sponsorship in violation of 15 U.S.C. § 1125(a);

  d.  Willfully diluted and tarnished the distinctive quality of the MONROE Marks under 15 U.S.C. § 1125(c);

  e.  Engaged in injury to business reputation and dilution under Florida Statutes § 495.151 and the Common Law; and

  f.  Willfully engaged in deceptive and unfair trade practices in violation of Florida Statutes § 501.201 *et seq*.

2. Ordering that Defendant and its officers, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies and attorneys and all persons in active concert or participation with Defendant or thereafter from:

  a.  Falsely associating the Marilyn Monroe Intellectual Property with Defendant or Defendant's business or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with The Monroe Estate and from otherwise interfering with or injuring the Marilyn Monroe Intellectual Property, the MONROE Marks or the goodwill associated therewith;

  b.  Using, promoting, advertising, publicizing, distributing and posting any of the Marilyn Monroe Intellectual Property, MONROE Marks or any other mark, designation, name, symbol or logo that is a copy or colorable imitation of, incorporate, dilutes, or is confusingly similar to the Marilyn Monroe Intellectual Property or MONROE Marks for any good or service;

    c.    Engaging in any act which is likely to dilute the distinctive quality of the MONROE Marks and/or injures The Monroe Estate's business reputation;

    d.    Representing or implying that Defendant is in any way sponsored by, affiliated or connected with, or endorsed or licensed by The Monroe Estate;

    e.    Applying to register the MONROE Marks or any other reproduction, counterfeit, copy, or colorable imitation of the MONROE Marks or the Marilyn Monroe Intellectual Property as a mark, business name, domain name, keyword or any other designation with any governmental authority or Internet registry; and

    f.    Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (f) above;

3. Ordering that Defendant deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession of Defendant, which bear the registered MONROE Marks or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates and models;

4. Ordering that The Monroe Estate is the exclusive owner of the MONROE Marks and that such marks are valid and protectable;

5. Ordering that The Monroe Estate is the exclusive owner of the Marilyn Monroe Intellectual Property and that such rights are valid and protectable;

6. Granting an award of damages suffered by The Monroe Estate by reason of Defendant's acts complained of in this Complaint according to proof at the time of trial;

7. Ordering that Defendant account to The Monroe Estate for any and all profits earned as a result of Defendant's acts in violation of The Monroe Estate's rights as complained of in

    this Complaint;

8. Granting an award of treble and/or punitive damages for the willful and wanton nature of Defendant's aforesaid acts;

9. For pre-judgment interest on any recovery by The Monroe Estate;

10. Granting The Monroe Estate's reasonable attorneys' fees, costs and expenses; and

11. Granting such other and further relief as is just and proper

Dated: July 19, 2013            Respectfully submitted,

                                      *s/Matthew D. Grosack*
                                      Michael G. Austin
                                      Florida Bar No. 0457205
                                      michael.austin@dlapiper.com
                                      Matthew D. Grosack
                                      Florida Bar No. 0073811
                                      matthew.grosack@dlapiper.com
                                      DLA PIPER (US) LLP
                                      200 South Biscayne Boulevard, Suite 2500
                                      Miami, Florida  33131-5341
                                      Telephone: (305) 423-8500
                                      Facsimile:   (305) 437-8131

                                      Gina Durham
                                      Pro Hac Vice Application to be Filed
                                      gina.durham@dlapiper.com
                                      Michael Geller
                                      Pro Hac Vice Application to be Filed
                                      michael.geller@dlapiper.com
                                      DLA Piper LLP (US)
                                      203 North LaSalle Street, Suite 1900
                                      Chicago, Illinois  60601-1293
                                      Telephone:  (312) 368-2152
                                      Facsimile:   (312) 251-2187

                                      Attorneys for Plaintiff  The Estate of Marilyn Monroe, LLC

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on July 19, 2013 on all counsel or parties of record on the Service List below.

*s/Matthew D. Grosack*

## SERVICE LIST

Oren S. Tasini, Esq.
otasini@haileshaw.com
Haile, Shaw & Pfaffenberger, P.A.
600 U.S. Highway One, Third Floor
North Palm Beach, FL  33408
Telephone:  (561) 627-8100
Facsimile:   (561) 622-7603
Attorneys for Defendant Monroe's Palm Beach, LLC